# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 12 2018, 6:33 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald C. Swanson, Jr.
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael G. Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Marquel Wattley,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 12, 2018

Court of Appeals Case No.
18A-CR-651

Appeal from the Allen Superior Court

The Honorable John F. Surbeck, Jr., Judge

Trial Court Cause No.
02D04-1606-F4-41

**Tavitas, Judge.**

# Case Summary

Marquel Wattley appeals his sentence for arson, a Level 4 felony; attempted arson, a Level 4 felony; resisting law enforcement resulting in bodily injury to an officer, a Level 6 felony; and resisting law enforcement by fleeing, a Class A misdemeanor. We affirm.

# Issues

The two issues before us are as follows:

    I.    Whether the trial court erred in failing to enter a sentencing statement.

    II.    Whether Wattley's sentence is inappropriate in light of the nature of his offenses and his character.

# Facts

Wattley regularly frequented the Burger King restaurant located in Fort Wayne's Southgate Plaza ("the Plaza"), which was owned and operated by Kellams Enterprises. On May 29, 2016, in the presence of other patrons, Wattley "tr[ied] to light [the] computer monitor in [the Burger King restaurant] dining room on fire" with a cigarette lighter. Tr. Vol. I pp. 10-11. A Burger King employee and at least one patron observed Wattley's actions. The employee reported the incident to the store manager, Bryan Yoder, and described Wattley as a black male in a red shirt and jeans, who was carrying a backpack.

[4] Wattley left the Burger King restaurant and later set multiple trashcan fires in the Plaza, including the most serious fire, which was set in front of Peerless Cleaners. Fire officials responded to the combined fires in front of the Peerless Cleaners and Eyes by India establishments, as well as to several smaller fires. In all, Wattley started six fires. Fire responders extinguished several fires in front of Peerless Cleaners, Eyes by India, in front of the Citilink bus hut, near the dialysis center, and the Sally Beauty Supply located in the Plaza. Investigators also found evidence of a fire that was ignited, but quickly burned out, in front of the Plasma Center business establishment in the Plaza.

[5] Peerless Cleaners's video surveillance system captured footage of a black male, dressed in a red shirt and wearing a backpack. The man hovered for approximately thirty seconds around the trashcan before the trashcan was engulfed in flames.

[6] Amid the commotion, Yoder approached and provided Wattley's physical description to a fire investigator. Approximately twenty minutes later, Wattley returned to the Burger King restaurant. Yoder flagged down uniformed Officer Geoff Norton of the Fort Wayne Police Department, who approached and asked to speak with Wattley. Wattley walked away. Officer Norton then grabbed Wattley, who backed away and tried to break free from Officer Norton's grip. Officer David Boles entered the Burger King restaurant to assist Officer Norton. Wattley "pull[ed] away," "yank[ed] away," punched, "wrestl[ed]," and "broke away from" the officers and ignored the officers'

multiple orders to "stop" and to "come here." *Id.* at 15, 16, 22, 27, 28. Officer Norton sprayed Wattley with pepper spray, but Wattley "continued to fight." *Id.* at 23.

[7] Wattley eventually fled the building, and the officers pursued him. Wattley continued to fight the officers in the parking lot. Officer Norton issued two warnings before deploying his taser. "After the [taser] cycle stopped, [Wattley] was still trying to fight officers while they're [sic] trying to put him into cuffs[.]" *Id.* at 24. The officers placed Wattley under arrest. At the time of his arrest, Wattley was wearing a red shirt and shorts and was carrying a backpack. A search incident to arrest yielded three cigarette lighters on Wattley's person. In the course of detaining and arresting Wattley, Officer Boles suffered a laceration, bruises, and scrapes.

[8] Subsequently, the Fort Wayne Fire Department District Fire Chief, Marc Schroeder, conducted a videotaped interview of Wattley.[1] During the interview, Wattley admitted that he: (1) tried to set fire to the computer monitor in the Burger King restaurant; (2) set multiple trashcan fires in the Plaza; and (3) wrestled away from Officers Norton and Boles despite knowing that they were police officers. Wattley blamed homelessness, frustration, and boredom for his actions in setting the fires.

---

[1] Wattley waived his right to counsel and consented to the interview.

The Fort Wayne Police Department determined that the six fires were "intentionally set," were similar in nature, and were all set by a single individual.[2] *Id*. at 80, 81. In all, Wattley's fires necessitated approximately $7,500 in damage repairs and replacement costs in the Plaza.

On June 3, 2016, the State charged Wattley with arson, a Level 4 felony ("Count I"); attempted arson, a Level 4 felony ("Count II"); arson, a Level 6 felony ("Count III"); resisting law enforcement, a Level 6 felony ("Count IV"); and resisting law enforcement, a Class A misdemeanor ("Count V").

In September 2016, Wattley filed a notice of defense of mental disease or defect, and the trial court appointed "two disinterested" mental health professionals to "determine [Wattley's] competency to stand trial and his sanity at the time of the alleged offense[s]." App. Vol. II p. 28. On March 3, 2017, the parties stipulated to the examining physicians' reports and to Wattley's mental competency to stand trial.

On the eve of Wattley's trial, the State dismissed Count III. On June 13, 2017, the trial court conducted a bench trial. Witnesses for the State testified to the foregoing facts, and the State published Wattley's videotaped interview to the

---

[2] As a fire investigator testified at trial, "There was no accelerant used. It was common combustibles ignited in a trash receptacle. The trash receptacles were all identical, and they were all within a close geographical distance." Tr. Vol. I pp. 80, 81.

Court. The State also introduced into evidence the surveillance video from Peerless Cleaners. *See* State's Ex. 17. The footage depicts a black male subject, dressed in a red shirt and carrying a backpack, as he approaches Peerless Cleaners's trashcan with an object in his hand. The subject bends at the waist and extends his arm into the trashcan for several seconds. The subject then squats beside the trashcan and, again, extends his hand into the trashcan. The subject then walks away and attempts to set fire to a decal on Peerless Cleaners's door. As the subject tries to set fire to the decal, flames appear inside and underneath the trashcan. The subject exits the camera view and, within moments, the trashcan is engulfed in flames and the awning above Peerless Cleaners is filled with billowing smoke. At the close of the evidence, the parties rested. The trial court found Wattley guilty of Counts I, II, IV, and V.

[13] On March 9, 2018, the trial court conducted Wattley's sentencing hearing. Jeannette Wattley ("Jeannette"), Wattley's mother, testified that Wattley has mental health challenges and that medical providers have previously recommended that Wattley be assessed for a host of mental conditions.[3]

---

[3] Jeannette, whom the record identifies as both "Janet" and "Jeannette," testified as follows:

> . . . [Wattley]'s not this monster that, you know, he's being painted as. [Wattley] has never been arrested. [Wattley] has never even been suspended from school, and prior to the episodes [Wattley] was in school full time, working a full time job and a part time job, and then [Wattley] had a car accident, and pretty much from that point on it just kinda [sic] went down-hill from there. * * * * * This wasn't normal for [Wattley].

Wattley presented no evidence, however, that he was diagnosed with any mental condition.

[14] Wattley also testified at the sentencing hearing. Wattley testified that, at the time of the fires, he was not enrolled in school and was recently fired from his job. Initially, Wattley appeared to admit his wrongdoing and to attribute his actions to a lack of focus and direction. In subsequent testimony, however, Wattley stated:

> [T]he prosecutor is – has been lying this entire time. She says that I said I – she said that I said I was just bored and didn't have nothing [sic] to do. I actually said, I never did it, and that's what I tell my Public Defender all the time, I tell my mom. I tell my mom I'm innocent, you know, I told you I'm innocent. That's all that needs to be said. * * * * * Every witness, you know, couldn't identify me as the criminal. The Battery on the officer, I ain't never [sic] threw a punch.

Tr. Vol. I p. 106.

[15] Without first entering a sentencing statement, the trial court sentenced Wattley as follows: on Counts I and II, consecutive six-year sentences in the Department of Correction ("DOC"), with two years suspended to probation on each sentence; and on Counts IV and V, concurrent one-year sentences in the

---

*See* Tr. Vol. I p. 101; App. p. 34; Tr. Vol. I p. 103.

DOC.[4]  The trial court ordered Wattley's sentences on Counts IV and V to be served concurrently with the sentences on Counts I and II.  Wattley now appeals his aggregate sentence of twelve years, with four years suspended to probation.

## Analysis

[16]  Wattley contends that the trial court abused its discretion in failing to enter a sentencing statement.  Sentencing is a discretionary function of the trial court, and we afford considerable deference to the trial court's judgment.  *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).  Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)."  *Id.*

[17]  When sentencing a defendant for a felony, the trial court must enter a sentencing statement "including reasonably detailed reasons or circumstances for imposing a particular sentence."  *Ackerman v. State,* 51 N.E.3d 171, 193 (Ind. 2016) (citing *Anglemyer v. State,* 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g,* 875 N.E.2d 218).  "[E]ven if the trial court is found to have abused its discretion in the process it used to sentence the defendant, the error is harmless

---

[4] It appears from the record that different judges presided over the bench trial and the sentencing hearing.

if the sentence imposed was not inappropriate." *Williams v. State*, 997 N.E.2d 1154, 1165 (Ind. Ct. App. 2013).

[18] Although the trial court was not required to enter a sentencing statement regarding Wattley's misdemeanor conviction, the trial court's failure to enter a sentencing statement as to Wattley's three felony convictions and to explain the court's sentencing reasoning is an abuse of discretion. *See Anglemyer,* 868 N.E.2d at 490.

[19] When we encounter a trial court's sentencing order that does not meet the requirements of the law, we have several options. *Williams*, 997 N.E.2d at 1165. We may remand for clarification or a new sentencing determination; we may affirm the sentence, if the error is harmless; or we may exercise our authority to review and revise the sentence pursuant to Indiana Appellate Rule 7(B). *Brown v. State*, 783 N.E.2d 1121, 1129 (Ind. 2003). Under the circumstances of this case, we will address whether Wattley's sentence is inappropriate under Indiana Appellate Rule 7(B).

[20] Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence "is inappropriate in light of the nature of the offense and the character of the offender." *McCain v. State,* 88 N.E.3d 1066, 1067 (Ind. 2018). The defendant bears the burden to persuade this court that his or her sentence is inappropriate. *Phipps v. State,* 90 N.E.3d 1190, 1198 (Ind. 2018). Indiana's

flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Shoun v. State,* 67 N.E.3d 635, 642 (Ind. 2017). Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Cardwell,* 895 N.E.2d at 1224.

[21] We consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence is ordered suspended "or otherwise crafted using any of the variety of sentencing tools available to the trial judge." *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010). In conducting our review, we do not look to see whether the defendant's sentence is appropriate or "if another sentence might be more appropriate; rather, the question is whether the sentence imposed is inappropriate." *Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007).

[22] To assess the appropriateness of a sentence, we first look to the statutory ranges established for the classification of the relevant offense: the sentence for a Level 4 felony ranges from two to twelve years, with an advisory sentence of six years. Here, on each of Wattley's Level 4 felony convictions, the trial court imposed advisory six-year sentences, with two years suspended to probation. The sentence for a Level 6 felony ranges from six months to two and one-half

years, with an advisory sentence of one year. Here, the trial court imposed the advisory one-year sentence on Wattley's Level 6 felony conviction. The maximum sentence for a Class A misdemeanor is one year. The trial court imposed the maximum sentence on Wattley's Class A misdemeanor conviction.

[23] The trial court then ordered the sentences on Counts I and II served consecutively to each other; the sentences on counts IV and V served concurrently to each other; and ordered counts IV and V served concurrently with the sentences on Counts I and II. Although Wattley faced a maximum sentence of twenty-seven and one-half years, he received an aggregate twelve-year sentence, with four years suspended to probation.

[24] Regarding the nature of the offenses, Wattley attempted to set fire to a computer monitor inside a Burger King restaurant and set a total of six trashcan fires in the Plaza. After witnesses identified Wattley as the arson suspect, Wattley "yank[ed] away," punched, "wrestl[ed]," "broke away from" investigating officers, ignored the officers' orders that he should "stop," and ran from the officers. Tr. Vol. I pp. 15, 16, 22, 27, 28. Officer Boles suffered scrapes, bruises, and a laceration in the scuffle with Wattley. As a result of Wattley's actions, Kellams Industries incurred approximately $7,500 in repair and replacement costs to the business premises or property of Peerless Cleaners, Eyes by India, CSL Plasma, Sally's Beauty Supply, Citi Link, and Burger King.

Regarding Wattley's character, the record indicates that he attributed his crimes to boredom and lack of direction. Wattley's poor character was apparent when he committed arson, destroyed property, and wasted police and fire department resources in an apparent effort to occupy and amuse himself. Moreover, despite being observed by witnesses and captured on video as he committed the instant offenses, Wattley insists he was "falsely accused." App. Vol. II p. 38.

We further note that Wattley alludes to "a history of bi-polar disorder, schizophrenia, panic attacks" and an "impulsivity control issue," however, Wattley presented no evidence of a mental health diagnosis that may warrant imposition of a lesser sentence. *See* Appellant's Br. p. 9; Tr. p. 98.

In light of the foregoing, and given the determination of Wattley's mental fitness to stand trial, Wattley has failed to establish that his sentence—which consists of suspended, advisory, and concurrent sentences—is inappropriate in light of the nature of his offenses and his character. Accordingly, we deem the trial court's omission of a sentencing statement to be harmless error. *See Mendoza*, 869 N.E.2d at 556.

## Conclusion

Wattley's sentence is not inappropriate in light of the nature of his offenses and his character. The trial court's abuse of discretion in failing to enter a sentencing statement is, therefore, harmless error. We affirm.

Affirmed.

Brown, J., and Altice, J., concur.